**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 20-2279**

─────────────

MARIA IDALIA GONZALEZ-LEMUS; N.M.H.G.,

Petitioners,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

─────────────

On Petition for Review of an Order of the Board of Immigration Appeals.

─────────────

Argued:  December 9, 2022                      Decided:  January 5, 2023

─────────────

Before GREGORY, Chief Judge, and THACKER and RUSHING, Circuit Judges.

─────────────

Petition for review dismissed in part, denied in part by unpublished per curiam opinion.

─────────────

**ARGUED:**  Melody Busey, DEVINE & BEARD LAW OFFICE, Charleston, South Carolina, for Petitioners.  Arthur Leonid Rabin, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:** Mark Devine, DEVINE & BEARD LAW OFFICE, Charleston, South Carolina, for Petitioners.  Brian Boynton, Acting Assistant Attorney General, Stephen J. Flynn, Assistant Director, Anna Juarez, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Maria Idalia Gonzalez-Lemus ("Gonzalez-Lemus") and her daughter, N.M.H.G.,[1] (collectively, "Petitioners") seek review of the decision of the Board of Immigration Appeals (the "BIA") denying their requests for asylum, withholding of removal, and relief pursuant to the Convention Against Torture (the "CAT"). Additionally, N.M.H.G. seeks review of the BIA's denial of her motion to remand based on her eligibility for special immigrant juvenile ("SIJ") status.

Attorney General Merrick B. Garland ("Respondent") has moved to dismiss the petition for review as it relates to Petitioners' claims for asylum and withholding of removal because the immigration judge ("IJ") denied relief on those claims due to Petitioners' failure to corroborate Gonzalez-Lemus's allegations of rape, and Petitioners did not challenge the IJ's corroboration determination in their appeal to the BIA. Respondent further requests that the remainder of the petition for review be summarily denied.

We agree with Respondent that we lack jurisdiction to consider Petitioners' arguments as to the IJ's corroboration determination. Accordingly, we grant Respondent's motion to dismiss the petition for review with respect to those arguments. And because the IJ's corroboration determination was an independent basis for the IJ's denial of asylum and withholding of removal, we deny the petition for review as to those forms of relief. We likewise deny the petition for review as to Gonzalez-Lemus's claims for CAT relief

---

[1] Because N.M.H.G. is a minor, we refer to her by her initials in this opinion.

2

and N.M.H.G.'s motion to remand, but we deny as moot Respondent's request for summary disposition of those arguments.

I.

A.

Petitioners are natives and citizens of El Salvador.  In June 2015, Gonzalez-Lemus was working at her sister's restaurant, which was located next door to Gonzalez-Lemus's home.  Shortly after leaving the restaurant for the day, Gonzalez-Lemus was entering her home when she was approached by three gang members requesting that she pay "rent" for the restaurant.  When Gonzalez-Lemus told the men that she did not know what they were talking about, one of the men threatened to "take something from here anyways."  A.R. 102.[2]  Approximately two to three weeks later, Gonzalez-Lemus was raped at her home by an unknown, masked man.  The man threatened to harm N.M.H.G., who was then 11 years old, if Gonzalez-Lemus told anyone about the incident.  Therefore, Gonzalez-Lemus did not seek medical attention or report her rape to the local authorities.

Instead, Petitioners fled three hours away to Gonzalez-Lemus's father's house and stayed there for about a week before leaving because Gonzalez-Lemus feared for her father's safety.  In August 2015, Petitioners set off for the United States.  They crossed the southern border into Texas a month later and were apprehended by immigration officials. When Gonzalez-Lemus expressed fear about returning to El Salvador, officials referred her to an asylum officer for a credible fear interview.

---

[2] Citations to the "A.R." refer to the Administrative Record filed in this appeal.

3

B.

Shortly thereafter, on October 10, 2015, Petitioners were served with notices to appear before an IJ that charged them with inadmissibility because they lacked valid entry documentation. At a hearing held on September 19, 2016, Petitioners, through counsel, conceded removability. However, at a hearing held on January 30, 2017, Petitioners filed applications for asylum, withholding of removal, and CAT relief.

The IJ held a merits hearing on Petitioners' requests for relief on October 23, 2017, at which Gonzalez-Lemus testified about the events we have described. On May 15, 2018, the IJ issued a written decision denying Petitioners' requests for relief and ordering them removed to El Salvador. Petitioners appealed the IJ's decision to the BIA. In the meantime, N.M.H.G. petitioned for SIJ status and asked the BIA to remand her case to the IJ for administrative closure of her removal proceedings. On November 4, 2020, the BIA issued a written decision affirming the IJ's denial of relief and denying N.M.H.G.'s motion to remand.

Petitioners then filed a timely petition for review in this court. Respondent later moved to dismiss the petition for review as it relates to the IJ's corroboration determination and requested summary disposition of the remainder of the petition.

II.

A.

We begin with Respondent's assertion that we lack jurisdiction to consider Petitioners' arguments that the IJ improperly required corroboration of Gonzalez-Lemus's allegations about her rape and erroneously determined that she failed to corroborate those

4

allegations.  For the reasons that follow, we agree with Respondent that the portion of the petition for review dealing with the IJ's corroboration determination must be dismissed.

A non-citizen's "failure to dispute an issue on appeal to the BIA constitutes a failure to exhaust administrative remedies that bars judicial review." *Massis v. Mukaskey*, 549 F.3d 631, 638 (4th Cir. 2008) (citing 8 U.S.C. § 1252(d)(1)).  Stated another way, "when a petition [for review] contains an argument that has never been presented to the BIA for consideration, we lack jurisdiction to consider it even if other arguments in the petition have been exhausted." *Cabrera v. Barr*, 930 F.3d 627, 631 (4th Cir. 2019).  Petitioners did not challenge the IJ's corroboration determination in their brief to the BIA.  Their failure to pursue that claimed error in their appeal precludes our consideration of their arguments relating to the IJ's corroboration determination in their petition for review.

"[E]ven when [an asylum] applicant's testimony is deemed credible, the [IJ] still may require the applicant to present corroborating evidence . . . ." *Arita-Deras v. Wilkinson*, 990 F.3d 350, 357 (4th Cir. 2021).  In this case, the IJ concluded that corroborating evidence was required but held that the evidence Petitioners submitted in support of their claims did not sufficiently corroborate Gonzalez-Lemus's allegations of rape.  Specifically, the IJ determined that letters written by Gonzalez-Lemus's family and friends were not helpful because they did not mention the rape and that evidence about widespread gang activity and violence against women in El Salvador did not shed light on the specific incident involving Gonzalez-Lemus.

In their brief to the BIA, Petitioners raised five arguments that correspond with every other argument they make in the petition for review they filed in this court, *except*

5

for their challenge to the IJ's corroboration determination. The word "corroboration" does not appear even once in Petitioners' brief to the BIA, nor does the brief discuss the IJ's evaluation of the letters written by Gonzalez-Lemus's family and friends or the country conditions information that were the subject of the IJ's corroboration ruling. As a result, the BIA concluded that Petitioners waived any challenge to the IJ's corroboration determination on appeal because they did not "meaningfully challenge" that determination. A.R. 3 (citing *In re R-A-M-*, 25 I. & N. Dec. 657, 658 n.2 (B.I.A. 2012)). We agree with the BIA that Petitioners failed to administratively exhaust their corroboration arguments. As a result, we lack jurisdiction to consider those arguments and grant Respondent's motion to dismiss those arguments from the petition for review.

Importantly, the IJ identified Petitioners' failure to corroborate Gonzalez-Lemus's allegations of rape as an independent reason for denying Petitioners' request for asylum. The IJ further concluded that Petitioners were not entitled to withholding of removal for the same reasons they were not entitled to asylum. Therefore, we need not address Petitioners' arguments in their petition for review that the untimely filing of their asylum applications should be excused and that they are eligible for asylum and withholding of removal. We deny the petition for review as to those arguments.

B.

We next turn to Petitioners' assertion that the IJ and the BIA erroneously denied Gonzalez-Lemus's request for CAT relief. "When, as here, the BIA affirms an IJ's decision while adding its own reasoning, we review both decisions." *Tetteh v. Garland*, 995 F.3d 361, 365 (4th Cir. 2021). In doing so in the CAT context, we review the BIA's

6

and the IJ's findings of fact for substantial evidence and their legal conclusions de novo. *Rodriguez-Arias v. Whitaker*, 915 F.3d 968, 972 (4th Cir. 2019).

A non-citizen seeking CAT relief must demonstrate that "it is more likely than not that he or she would be tortured" upon removal. 8 C.F.R. § 1208.16(c)(2). "Torture" is "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . when such pain or suffering is inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official . . . or other person acting in an official capacity." *Id.* § 1208.18(a)(1). We agree with the IJ and the BIA that Gonzalez-Lemus failed to establish a likelihood of future torture at the hands of the authorities upon her return to El Salvador.

First, Gonzalez-Lemus has not demonstrated that she would be subject to torture if she returned to her native country. "Factors properly considered [in this inquiry] are evidence of past torture, whether the individual could relocate to another part of the country where she is not likely to be tortured, evidence of human rights violations in the country of removal, and any other relevant country-specific information." *Singh v. Holder*, 699 F.3d 321, 334 (4th Cir. 2012) (citing 8 C.F.R. § 1208.16(c)(3)). Importantly, "evidence of past torture is relevant, [but] it does not create a presumption of future torture." *Cabrera Vasquez v. Barr*, 919 F.3d 218, 222 (4th Cir. 2019).

Even if Petitioners Gonzalez-Lemus suffered past torture, the IJ correctly recognized that Gonzalez-Lemus's own testimony proves that her allegations of future torture are based on speculation. Specifically, Gonzalez-Lemus testified that she did not know what would happen to her if she returned to El Salvador but "[p]erhaps [she] would

7

[be] at risk." A.R. 105. She further testified that she was not threatened during the time she was staying at her father's house and that she chose to leave on her own because she was afraid of the neighbors asking questions about her presence. Relatedly, Gonzalez-Lemus testified that her family members -- including her sister, who owns the restaurant giving rise to the gang's extortion demand against Gonzalez-Lemus -- remain in El Salvador and have not been harmed. And she testified that she did not know the men who attempted to extort her or the man who raped her, which renders her assertion that the two incidents were connected an assumption that is unsupported by the record evidence.

As for Gonzalez-Lemus's more general evidence about gang activity and violence against women in El Salvador, "the mere existence of a pattern of human rights violations in a particular country does not constitute a sufficient ground for finding that *a particular person* would be more likely than not to be tortured." *Nolasco v. Garland*, 7 F.4th 180, 191 (4th Cir. 2021) (emphasis supplied) (quoting *Singh*, 699 F.3d at 334–35); *see also Lizama v. Holder*, 629 F.3d 440, 449 (4th Cir. 2011) (holding that petitioner not entitled to CAT relief because he "failed to establish he would be targeted by gangs more than any other citizens"). Therefore, this wide-ranging country conditions information is not sufficient to establish Gonzalez-Lemus's claim regarding the likelihood that she, and her daughter, would suffer torture upon returning to El Salvador.

Nor does the country conditions information support a conclusion that the authorities in El Salvador would be responsible for any alleged future torture. "A public official acquiesces to torture if, 'prior to the activity constituting torture, [the official] ha[s] awareness of such activity and breach[es] his or her legal responsibility to intervene to

8

prevent such activity.'" *Lizama*, 629 F.3d at 449 (alterations in original) (quoting 8 C.F.R. § 1208.18(a)(7)). As the IJ pointed out, "The violence [Gonzalez-Lemus] fears is from the hands of criminal entities, actors outside of the government." A.R. 64. Although the country conditions information shows that gang activity is plainly widespread throughout El Salvador, that information also demonstrates that the government in El Salvador has undertaken efforts to combat gang activity. *See, e.g.*, *id.* at 266 ("El Salvador has adopted a hard-line law enforcement strategy to deal with gang violence."); *id.* at 267 ("The government has designed a holistic anti-crime policy, but lacks the funds to implement it."); *id.* at 282 ("One of the main government strategies for dealing with gangs had been hard-line law enforcement."). These efforts may not have been successful, but failed efforts do not constitute "acquiescence" for purposes of CAT relief. *See Lizama*, 629 F.3d at 449–50 (holding that efforts of government of El Salvador to combat gang violence prevented petitioner from "demonstrat[ing] that gangs or other criminal entities in El Salvador have the approval or the acquiescence of the government of El Salvador"). Accordingly, the BIA and the IJ properly denied CAT relief, and we deny the petition for review as to Petitioners' arguments to the contrary.

C.

Lastly, we address N.M.H.G.'s argument that the BIA erred by refusing to remand her case for further proceedings regarding her eligibility for SIJ status. We review the denial of a motion to remand for abuse of discretion. *Gonzalez v. Garland*, 16 F.4th 131, 145 (4th Cir. 2021).

9

"Remand is available in two contexts before the BIA: when [a non-citizen] seeks reconsideration of a decision or when [a non-citizen] seeks to have the proceedings reopened." *Obioha v. Gonzales*, 431 F.3d 400, 408 (4th Cir. 2005). "[A] request for reconsideration is based upon 'errors of fact or law in the prior [BIA] decision,' whereas a request to reopen proceedings results from changed circumstances and specifically contemplates that [a non-citizen] will do so 'for the purpose of submitting an application for relief.'" *Id.* (first quoting 8 C.F.R. § 1003.2(b)(1); and then quoting 8 C.F.R. § 1003.2(c)(1)). N.M.H.G.'s motion to remand requested that the case be remanded to the IJ "for consideration of new evidence and to seek administrative closure of her proceedings" because she had applied for SIJ status. A.R. 11. Such a request is more akin to a motion to reopen than a motion to reconsider.

A motion to reopen must "state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 1003.2(c)(1). To that end, the motion "shall not be granted unless it appears . . . that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." *Id.* In addition, the BIA may determine whether "the party moving [to reopen] has made out a prima facie case for relief," but even if the movant makes that showing, the BIA retains the "discretion to deny a motion to reopen." *Id.* § 1003.2(a); *see also Cruzaldovinos v. Holder*, 539 F. App'x 225, 227 (4th Cir. 2013) (per curiam) ("[T]he regulation governing motions to reopen . . . authorizes the [BIA] to assess the [non-citizen's] prima facie eligibility for the relief he plans to seek.").

10

In this case, the BIA did not err by denying N.M.H.G.'s motion to remand because N.M.H.G. did not establish that she was eligible for SIJ status. She supported her motion to remand with a copy of a notice dated June 19, 2018, informing her that federal immigration authorities had received her application for SIJ status six days earlier. She did not attach any other documentation. The BIA correctly concluded that the notice was "insufficient to show [N.M.H.G.] is prima facie eligible for [SIJ] status." A.R. 5. "[A]n immigrant who is present in the United States" is eligible to apply for SIJ status upon obtaining a court order declaring her "dependent on a juvenile court located in the United States" or "legally committ[ing her] to, or plac[ing her] under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court." 8 U.S.C. § 1101(a)(27)(J)(i). But N.M.H.G.'s motion to remand included no such court order, which is the threshold for obtaining SIJ status. In fact, there is no such court order in the administrative record in this case. Because N.M.H.G. failed to establish her prima facie eligibility for SIJ status, the BIA did not abuse its discretion by denying N.M.H.G.'s motion to remand on that basis, and we deny the petition for review as to this argument.

## III.

For the foregoing reasons, we grant Respondent's motion to dismiss the petition for review as to Petitioners' corroboration arguments. We deny the petition for review in all other respects. We further deny as moot Respondent's motion for summary disposition.

*PETITION DISMISSED IN PART, DENIED IN PART*

11